25CA2480 Peo in Interest of CBB 07-02-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA2480
City and County of Denver Juvenile Court No. 23JV31028
Honorable Laurie Clark, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of C.B.B., a Child,

and Concerning S.A.,

Appellant.

---

JUDGMENT AFFIRMED

Division VI
Opinion by JUSTICE MARTINEZ*
Grove, and Berger*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced July 2, 2026

---

Miko Brown, City Attorney, Amy J. Packer, Assistant City Attorney, Denver, Colorado for Appellee

Josi McCauley, Guardian Ad Litem

The Morgan Law Office, Kristofr P. Morgan, Colorado Springs, Colorado for Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2025.

¶ 1    In this dependency and neglect proceeding, S.A. (mother) appeals the judgment terminating her parent-child legal relationship with C.B.B. (the child). We affirm.

## I.    Background

¶ 2    In December 2023, Denver Human Services (the Department) filed a petition in dependency and neglect concerning the then-newborn child. The Department alleged concerns about mother's substance use; homelessness; pending criminal charges; mental health issues; and medical conditions, including a traumatic brain injury and uncontrolled seizures. The Department also noted that the child was born with Down syndrome and needed to be on oxygen.

¶ 3    The juvenile court granted temporary legal custody of the child to the Department, and the Department placed her with her paternal grandmother. The juvenile court adjudicated the child dependent or neglected and adopted a treatment plan that required mother to, in sum, address her substance use and mental health issues; maintain stable housing; refrain from engaging in criminal activity; demonstrate the ability to meet the child's needs; and attend family time.

1

¶ 4    The Department later moved to terminate the mother's parental rights, and the juvenile court held a hearing on the motion. Approximately two years after the case opened, the court granted the termination motion.

## II.    Termination Criteria and Standard of Review

¶ 5    The juvenile court may terminate a parent's rights if it finds, by clear and convincing evidence, that (1) the child was adjudicated dependent or neglected; (2) the parent has not complied with an appropriate, court-approved treatment plan or the plan has not been successful; (3) the parent is unfit; and (4) the parent's conduct or condition is unlikely to change in a reasonable time. § 19-3-604(1)(c), C.R.S. 2025.

¶ 6    The question of whether a juvenile court properly terminated parental rights is a mixed question of fact and law. *People in Interest of S.R.N.J-S.*, 2020 COA 12, ¶ 10. Thus, we review the court's factual findings for clear error but review de novo its legal conclusions based on those facts. *Id.*

## III.    Reasonable Efforts

¶ 7    Mother contends that the juvenile court erred by finding that the Department made reasonable efforts to rehabilitate her and

2

reunite her with the child.  Specifically, she argues that the Department failed to provide adequate family time.  We disagree.

### A.    Applicable Law

¶ 8    To determine whether a parent is unfit, the juvenile court must consider whether the department of human services made reasonable efforts to rehabilitate the parent and reunite the family.  *See* §§ 19-3-100.5(1), 19-3-604(2)(h), C.R.S. 2025; *People in Interest of S.N-V.*, 300 P.3d 911, 915 (Colo. App. 2011).  "Reasonable efforts" means the "exercise of diligence and care" for children who are in out-of-home placement.  § 19-1-103(114), C.R.S. 2025.  Services provided in accordance with section 19-3-208, C.R.S. 2025, satisfy the reasonable efforts standard.  § 19-1-103(114).

¶ 9    As relevant here, a department must provide family time services for parents with children in out-of-home placement if those services are determined to be necessary and appropriate by the individual case plan.  § 19-3-208(1), (2)(b)(IV); *People in Interest of E.D.*, 2025 COA 11, ¶ 14.  The child's health and safety are the paramount concerns in determining whether, and what type of, family time services are necessary and appropriate.  *See* § 19-3-208(2)(a); *People in Interest of A.A.*, 2020 COA 154, ¶ 17.

3

¶ 10    The juvenile court should analyze a department's efforts by considering the totality of the circumstances and accounting for all services and resources provided to a parent to ensure the completion of the entire treatment plan. *People in Interest of My.K.M. v. V.K.L.*, 2022 CO 35, ¶ 33. A parent is ultimately responsible for using the services to obtain the assistance needed to comply with their treatment plan. *People in Interest of J.C.R.*, 259 P.3d 1279, 1285 (Colo. App. 2011).

## B. Analysis

¶ 11    The juvenile court found that the Department made reasonable efforts to rehabilitate mother and reunite her with the child. In sum, the court found, with record support, that the Department made referrals and provided services related to substance use, mental health, housing, life skills, and safe parenting. It also found, with record support, that the caseworker made ongoing efforts to locate mother and engage with her throughout the case. However, the court concluded that mother's "lack of engagement in services and treatment . . . left the Department unable to effectuate the goal of rehabilitating [her] to safely parent the minor child."

¶ 12    Mother challenges the court's reasonable efforts determination only as it relates to family time. She does not assert that the Department did not provide any family time services at all. Indeed, the record indicates that the caseworker made at least four family time referrals, but mother was repeatedly discharged from those family time programs because of her lack of attendance and inability to regulate her emotions during visits.

¶ 13    Rather, mother argues that the family time provided by the Department was inadequate because (1) family time was "unnecessarily" restricted and reduced throughout the case; (2) it often occurred during the child's medical appointments; and (3) the caseworker did not make a new family time referral or arrange any visits after learning that mother was in jail. We are not persuaded.

1.    Restriction and Reduction of Family Time

¶ 14    First, the record belies mother's contention that her family time was "unnecessarily" restricted and reduced throughout the case. Initially, the juvenile court ordered the Department to provide supervised family time, but the court later increased the level of supervision by ordering the Department to provide therapeutic visits. The juvenile court made this change based on concerns for

the child's safety — specifically, that mother put the child's safety at risk because she was unable to regulate her emotions, meet the child's medical needs, or properly feed the child. Although mother initially objected to therapeutic visits and requested a contested hearing on the restriction, she then changed her mind and waived the hearing.

¶ 15 It is also true that the juvenile court initially ordered the Department to provide two-hour visits twice a week but later reduced the frequency and duration of mother's family time. However, the caseworker testified that the reduction was based on mother's inconsistent attendance and the child's feeding schedule; the child had to be fed with a feeding tube, and mother did not know how to properly use it. Contrary to mother's implication that the Department did not provide her with the opportunity to learn how to use the feeding tube, which deprived her of longer visits with the child, the caseworker testified that she arranged for a nurse to teach mother how to use the feeding tube during one of mother's visits. But even after the training, mother was unable to demonstrate proper use of the feeding tube. The caseworker did not arrange additional training for mother because the child started

6

using a different type of feeding tube about a year before the termination hearing, and mother "ha[d] not been around" to learn how to use it. Indeed, the caseworker testified that in the fifteen months leading up to the termination hearing, she had only been able to speak to mother a few times, and mother had not attended any family time despite the family time providers' repeated attempts to contact mother to schedule visits.

¶ 16    In sum, the record indicates that the juvenile court properly restricted and reduced mother's family time based on the child's significant health and safety needs. *See* § 19-3-217(d), C.R.S. 2025 (a court may restrict family time if it is necessary to protect a child's safety or mental, emotional, or physical health); *A.A.*, ¶ 17. Thus, we reject mother's contention that the juvenile court "unnecessarily" restricted and reduced her family time.

### 2.    Family Time During Medical Appointments

¶ 17    Next, while mother argues that her family time was deficient because it "often occurred" during the child's medical appointments, we are not persuaded. In support of her argument, mother points us to an April 2024 motion in which she asserted that the Department had improperly scheduled some of her visits

7

during the child's medical appointments. But shortly after mother filed that motion, the juvenile court ordered the Department to ensure that mother's family time was not scheduled during the child's medical appointments. Mother does not point us to any part of the record indicating that the Department did not abide by that order during the remaining nineteen months of the case. Thus, the record simply does not support mother's assertion that her family time was inadequate because it "often occurred" during the child's medical appointments. Accordingly, we reject this argument.

### 3. Family Time While Incarcerated

¶ 18 Finally, we are not persuaded that the juvenile court erred by determining that the Department made reasonable efforts even though the caseworker failed to make a new family time referral or arrange visits while mother was in jail. By the time of the termination hearing, mother had been in jail for about a month and a half. However, the caseworker testified that she did not have any information about mother's whereabouts until late October 2025, when she initiated an online search for mother and discovered that she was in jail. Shortly thereafter, about two weeks before the termination hearing, the caseworker went to the jail to meet with

8

mother. During that meeting, the caseworker did not offer to arrange family time or make a new family time referral.

¶ 19 Even assuming that the caseworker should have discussed family time with mother during their meeting or made a new family time referral thereafter, mother does not explain how two weeks without a family time referral rendered the Department's overall efforts unreasonable. We are not convinced that it did, especially when considering (1) the juvenile court's finding that mother's engagement with the child had been "inconsistent throughout the case"; (2) the caseworker's testimony that mother had not attended any family time in the fourteen months leading up to her incarceration; and (3) the ample evidence showing that the Department provided numerous services, including family time, to mother throughout the case. *See My.K.M.,* ¶ 33 (to analyze reasonable efforts, the court must look at the totality of the circumstances).

¶ 20 Based on the foregoing, we reject mother's argument that the juvenile court's reasonable efforts determination was erroneous based on the caseworker's failure to make a family time referral while mother was in jail. Because we reject all of mother's family

9

time arguments, we discern no error in the juvenile court's determination that the Department made reasonable efforts to rehabilitate mother and reunite her with the child.

## IV. Fitness Within a Reasonable Time

¶ 21 Mother also contends that the juvenile court erred by finding that she could not become fit within a reasonable time. We discern no error.

## A. Applicable Law

¶ 22 A parent must have a reasonable amount of time to work on a treatment plan before the juvenile court terminates their parental rights. *People in Interest of D.Y.*, 176 P.3d 874, 876 (Colo. App. 2007). The determination of a reasonable period is necessarily fact specific, and thus, what constitutes a reasonable time to comply with a treatment plan may vary from case to case. *Id.* In determining whether a parent can become fit in a reasonable time, the juvenile court may consider whether any change has occurred during the pendency of the proceeding. *K.D. v. People*, 139 P.3d 695, 700 (Colo. 2006). A reasonable time is not an indefinite time, and it must be determined by considering the physical, mental, and

10

emotional conditions and needs of the child. *People in Interest of S.Z.S.*, 2022 COA 133, ¶ 24.

¶ 23    Additionally, when a child is under six years old, the juvenile court must consider the expedited permanency planning (EPP) provisions, which require that the child be placed in a permanent home as expeditiously as possible. *See* §§ 19-1-102(1.6), 19-1-123, 19-3-702(5)(c), C.R.S. 2025.

## B.    Analysis

¶ 24    The juvenile court considered whether mother could become fit within a reasonable amount of time but ultimately concluded that she could not. The court noted that because of the child's age, the EPP provisions applied and the case could not be "extended indefinitely." Also, it found that the child needed the permanency that adoption would provide.

¶ 25    Further, the juvenile court found that because of mother's minimal engagement throughout the case, "the same issues that caused the case to open continue[d] to be present nearly two years later." To that end, the court found that concerns about mother's ability to meet the child's heightened needs remained at the time of the termination hearing. It also found that mother did not have

11

stable housing and had not addressed her mental health and medical issues. Thus, it concluded that "additional time [would] likely not change [mother's] conduct or condition."

¶ 26 The record supports these findings. By the time of termination, the child was almost two years old, and she had been in out-of-home placement for her entire life. Further, over a year had passed since the court adopted mother's treatment plan. During that year, mother did not engage in the services offered to mitigate the concerns about her ability to meet the child's significant needs.

¶ 27 The caseworker testified that mother had not complied with her treatment plan or addressed any of the concerns that brought the family to the Department's attention. Specifically, the caseworker testified that mother had not engaged in substance use or mental health treatment, had not addressed her medical issues, and did not have stable housing. The caseworker also testified that in the year leading up to the hearing, mother had not attended any family time or any of the child's medical appointments. Thus, the caseworker opined, as an expert in social casework with an emphasis in child protection, that mother could not safely care for

the child because she did not understand the child's medical needs. The caseworker also opined that mother could not become fit within a reasonable time because in the two years that the case had been open, "nothing ha[d] changed," and mother was "basically starting from the very beginning" in terms of her engagement in services.

¶ 28     To the extent that mother argues that the court should have allowed more time because her family time had gone well and she was working on obtaining stable housing, we are not persuaded. The juvenile court heard testimony about mother's family time and recent efforts to obtain stable housing. But it still found, in sum, that a further delay in permanency would not be in the child's best interests based on mother's overall lack of engagement, the child's young age, and the child's high needs. The court's finding was supported by the record, and we cannot reweigh the evidence. *See People in Interest of K.L.W.*, 2021 COA 56, ¶ 62 (it is not our role to reweigh the evidence or substitute our judgment for that of the juvenile court).

¶ 29     Further, to the extent that mother argues that the juvenile court should have allowed more time for the Department to provide reasonable accommodations under the Americans with Disabilities

13

Act (ADA) and additional services for her "special needs," we conclude that her argument is undeveloped. On appeal, she does not identify any specific services or accommodations that were lacking during the year leading up to termination. Nor does she explain how more services or accommodations would have rendered her fit within a reasonable time, particularly when considering the juvenile court's extensive findings about mother's overall lack of engagement and the child's need for permanency based on her heightened needs. Accordingly, we decline to address mother's ADA argument. *See People in Interest of D.B-J.*, 89 P.3d 530, 531 (Colo. App. 2004) (declining to address an appellate contention that lacked supporting facts and specific arguments).

¶ 30    Based on the foregoing, we conclude that the juvenile court properly analyzed whether mother could become fit within a reasonable time. Because the court's findings are supported by the record, we decline to disturb its determination.

## V.    Disposition

¶ 31    The judgment is affirmed.

JUDGE GROVE and JUDGE BERGER concur.

14